FILED

'06 MAR 30 P12:52

FILED

'06 MAR 30 P12:52

CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMMITT GRIER JR., | : | |
| Plaintiff | : | C.A. 05-05 ERIE |
| v. | : | Judge Maurice B. Cohill Jr. |
| EDWARD J. KLEM, et al., | : | |
| Defendants | : | |

**PLAINITFF'S REPLY BRIEF TO DEFENDANTS**
**MOTION TO DISMISS PURSUANT TO FED. R.C.P. 12 (b)(6)**

AND NOW comes Emmitt Grier Jr., the plaintiff, who files this brief in response to defendants 12 (b)(6) motion.

PRELIMINARY STATEMENT

Plaintiff is a state prisoner convicted of Rape who brought this § 1983 action to obtain access to genetic evidence taken from rape victim for DNA testing. Plaintiff claims that he has a due process right of access to genetic material for limited purpose of DNA testing. The evidence is exculpatory and material to plaintiff's defense and its' continued suppression by District Attorney's Office of Erie County, violates plaintiff's 4th, 5th, 6th, 8th and 14th Amendment Rights of the State and Federal Constitution.

## RELEVANT PROCEDURAL HISTORY

On June 22, 2000, after a three-day jury trial, plaintiff was convicted at Docket No. 2646, of one count of Rape, a first degree felony; One count of Unlawful Restraint, a misdemeanor of the first degree; at Docket No. 2647, one count of Criminal Attempt at Rape, a first degree felony; one count of Unlawful Restraint, a misdemeanor of the first degree; and at Docket No. 2648; one count of Burglary, a felony of the first degree; Rape, a felony of the first degree and Unlawful Restraint, a misdemeanor of the first degree.

Defendant/Plaintiff was sentenced on August 10, 2000 to an aggregate sentence of twenty-eight and one half years (28½) to seventy-five (75) years of state incarceration.

Whereas, plaintiff maintains that he was not responsible for the crimes of June 30th, 1998 and November 12th, 1998; and that the alledged incident of August 31st, 1999 was consensual sex between the plaintiff and victim Ms. Loretta Hansbrew.

---

A third count, kidnapping, a first degree felony, was charged at Docket No. 2648, but was "Withdrawn at trial".

1.  It is disingenuous for the defendants to make a claim of iron-clad identification while denying plaintiff the only tests that is capable of providing such identification.

2.  The defendants contend in their Motion to Dismiss that,

    > "Further, he was able to indicate to Detective Jones specific facts about the case that no one but the person who committed the crime would know. Plaintiff also indicated not only to the victim, but to two other independent witnesses that he, in-fact, had committed the crimes and "didn't know what had come over him." (Def. Motion to Dismiss at #5, begining on line No.6)

3.  The defendants have offered no proof to the court from the record to support their statements. Moreover, plaintiff contends that the statements of the victim are much more compelling and an offer of proof concerning the issue of identification. (See Plaintiff's Exhibit "A" attached).

4.  <u>Godschalk v. Montgomery County District Attorney</u>, 177 F.Supp. 2d 366 (E.D. Pa. 2001) is a case in which the defendants cite in their (Motion to Dismiss at #6 line No. 8) as "strikingly similar to the one at bar"; is quite frankly, an understatement. Plaintiff contends that <u>Godschalk</u> could be his twin.

5.  In <u>Brady v. Maryland</u>, 373 U.S. 83, S.Ct.1194, (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Id</u>. at 87, 83 S.Ct. 1194. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

3

A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375 (1985).

6. Defendants respond that there is no need to do DNA testing on the genetic material since plaintiff's confession was not coerced and contained details of the rapes which were not known to the public and would only be known by the perpetrator.

7. The court in Godschalk, stated; "However, in considering whether plaintiff is entitled to the biological evidence under the Due Process Clause of the Fourteenth Amendment, we must employ the standard set by the Supreme Court in Brady and Bagley, supra. The one District Court decision which applied this standard to a request for genetic material for DNA testing in a § 1983 action, Harvey v. Horan, 119 F.Supp. 2d 581 (E.D. Va. 2000) (decision on motion to dismiss); 2001 WL 419142 (E.D. Va. April 16, 2001) (decision on motion for summary judgment), ordered disclosure of the evidence. The district court based its' decision on the lack of positive identification of the plaintiff as one of the culprits and doubts as to the credibility of the state's witnesses.

8. In the plaintiff's case there are **no witnesses** testimony to be considered. The victim offered no evidence that would be helpful in identifying the plaintiff as her attacker on the dates of June 30th, and November 12th, 1998. In-fact the victim initially believed that her attacker was someone named "Robert or Bob Vincent." See: Plaintiff's Exhibit (A).

4

9. Plaintiff is now aware that the police actually had two other possible suspects that fit the only descriptions the victim was able to provide. The victim (Ms. Hansbrew) stated the following in her interview; (See: Plaintiff's Exhibit "B".) "She was able to see by the man's hand that he was black. As he was moving her around to bind her hands she could see one of his legs, the leg of a black man. She also observed that the man had an overwhelming stench of body odor. She said she felt the man had not bathed for days. She could not tell if the man had any facial hair or what type of build he had. She did think this was not a very young man." "Victim has no suspect in mind but she did mention that an unknown b/m has been coming around and mowing her lawn recently. He also has a strong body odor". See Exhibit "B", which further states that, "She indicated that the man who had come by 4 or 5 times in the past couple months, to mow their lawn was a black male in his late 30's or early 40's and had a strong body odor as suspect did. Victim stated that she never engaged in conversation with the man who did the lawn but he may have assumed she was living alone."

10. Moreover, a thorough reading of plaintiff's Exhibit "B" will show that, other rapes took place around the same time and in the same neighborhood with similarities to the rape of this victim (Ms. Hansbrew).

11. It should be noted for the record that the plaintiff is well acquainted with the victim (Ms. Hansbrew). That is to say they are not strangers to one another.

12. Without retrying plaintiff's case here, plaintiff submits that both the lower court and Superior courts are in error regarding the exculpatory evidence being withheld by the District Attorney's Office; and further, trial and appeal counsel both rendered ineffective assistance regarding this case.

13. See: (Opinion of Judge Stephanie Domitrovich at pg.7 second paragraph); "As indicated earlier, Attorney Pitonyak informed the court that the defense at trial was that the crimes of June 30, 1998 and November 12, 1998, were perpetrated by someone other than the defendant, and that the third incident, on August 31, 1999 was consensual in nature".

14. As plaintiff previously stated, he is acquainted with the victim (Ms. Hansbrew), who could clearly see who he was and there was no attempt to conceal his identity regarding the incident of August 31, 1999.

15. Why then would counsel advise his client to ignore possible exculpatory evidence?

16. The court in Godschalk, goes on to say; "Nevertheless, if by some chance no matter how remote, DNA testing on the biological evidence excludes plaintiff as the source of the genetic material from the victims, a jury would have to weigh this result against plaintiff's uncoerced detailed confession to the rapes. While plaintiff's detailed confessions to the rapes are powerful inculpatory evidence, so to any DNA testing that would exclude plaintiff as the source of the genetic material taken from the victims would be powerful exculpatory evidence[2].

6

Such contradictive results could well raise reasonable doubts in the minds of the jurors as to plaintiff's guilt. Given the well-known powerful exculpatory effect of DNA testing, confidence in the jury's finding of plaintiff's guilt at his past trial, where such evidence was not considered, would be undermined".

17.   The defendants averred in their PCRA brief that, "DNA testing of semen stains found on the bedroom sheets at the victim's house following the incident of June 30, 1998, would be inconclusive since the semen could have been deposited by victim's husband".

18.   Quoting <u>Godschalk</u>, at 370; "DNA results which excluded the plaintiff would still be evidence of his innocence for the jury to consider. The fiance could also be tested to see if he was the source of the genetic material. Thus, we find that there is indeed a reasonable probability that had DNA evidence which showed plaintiff was not the source of the genetic material found on the victims been disclosed to the defense, the result of the proceeding would have been different. Of course, the ultimate decision as to whether the results of the DNA testing would warrant an acquittal or a retrial is for the state court to make. Since DNA testing of the genetic material could indeed provide material exculpatory evidence for a jury to consider along with the inculpatory evidence of plaintiff's detailed confession, we find that plaintiff has a due process right of access to the genetic material for the limited purpose of DNA testing."

19.   Plaintiff has presented a cognizable claim under §1983 and has presented a case upon which relief can be granted.

WHEREFORE, it is respectfully requested that this Honorable Court **DENY** DEFENDANTS Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12 (b)(6).

Respectfully Submitted.

_Emmitt Grier Jr._
Emmitt Grier Jr., <u>pro</u> <u>se</u>,
No. EJ-7879
SCI-Mahanoy
301 Morea Road
Frackville, Pa. 17932

_3-27-06_
date:

## CERTIFICATE OF SERVICE

I hereby certify that I am placing in the U.S. mail box located at (the front of my cell block) a true and correct copy of Plaintiff's Reply Brief, Plaintiff's Counter Motion and Brief with Statement of Material Facts, in Support of Summary Judgment Pursuant to Fed. R. Civ. P. (L.R. 56.1); for service upon the person(s) listed below.

### Service by certified mail
### Addressed as follows:

United States District Court
For the Western District of PA.
Hon. Judge Maurice B. Cohill Jr.
17 S. Park Row, Room 206
Erie, Pennsylvania 16501

Matthew J. Mclaughlin
246 West Tenth Street
Erie Pennsylvania. 16501
Counsel for Defendant,
Office of Dist. Attorney

*Emmitt Grier Jr.*, pro se,
No. EJ-7879
SCI-Mahanoy
301 Morea Road
Frackville, Pa. 17932

3-27-06
date:

```
                        CITY OF ERIE                 Date: 11/04/1999
                     POLICE DEPARTMENT               Page:           6
  Case Description:                                  Case Number: 1998-00041194
  ABDUCTION & KIDNAPPING
```

GOING TO ERIE COUNTY PRISON TO SERVE WARRANT ON EMMITT          15:42:39
GRIER JR.                                                        15:42:45


Patrick Haller #281 DICTATED
  #A4 Rouse/Haller sent to 721 East 19th for a possible rape victim.
On arrival we spoke to victim Loretta Hansbrew who stated at approx-
imately 0930 hrs. she left her in-laws' residence at 721 East 19th
enroute to pick up her daughter at Tops Market on East 38th St. She
got to the intersection of East 19th & Wayne St. when she heard a
noise from within her van. She looked up and saw the head of an
unknown black male in the mirror. The black male pulled the hood
of her coat over her head, stuck something to her neck and ordered
her to pull over or he'd kill her. She pulled the van over and he
pulled her to the back of the van where he ripped off her T-shirt
which was under her sweatshirt and coat and tied her hands behind her
back. He tells her not to move and drives the van to the Holy Rosary
parking lot on East 27th St. The suspect then goes to the back of
the van where Hansbrew is lying on her back, he strips Hansbrew of
her clothing and attempts to tie her legs with her jeans. He asks
her if she saw his face and Hansbrew pleads to him that she hadn't
seen him. She then kicks the suspect in which she believes was the
genital area because she heard him groan and bang into the side door.
  The suspect then exited the vehicle and fled the area. Hansbrew was
able to untie herself and got dressed and drove to the Tops Market to
pick up her daughter, then drove back to 721 East 19th and called
EPD.
*
  Hansbrew was the victim of a rape on June 30, 1998, incident
#98-22579, and believes it is the same person in both cases due
to the voice and the same pungent body odor. The only physical
description Hansbrew could give was that the suspect had a short
cropped haircut and was possibly wearing a sweaterlike material for
a shirt. Hansbrew states she and her relatives were at Holy Rosary
earlier this evening and believes the suspect possibly could have
entered the van at that point and drove down to 721 East 19th with
two of her relatives present in the van and then waited until she was
alone. The van was towed by West End to the basement for processing.
Refer to Det. Love in CID for followup.
    Signed: Patrick Haller #281   Supv: Capt.T.P.Adams #153    11/13/98
*                                ATTACHMENTS
Forensic Examination Request


Det Sgt Skindell 11/13/98 suppl
Det Sgt Skindell #98-41194
*
This is in relationship to the rape of Loretta Hansbrew. M's Hansbrew
was in the station this date being 11/13/98 in regards to picking
up her vehicle.
*
At that time she was talking with Sgt. DeDionisio of our ID Unit
in regards to a possible suspect. Sgt. DeDionisio contacted me and
I advised him that Det Love was handling the case and was not

```
                        CITY OF ERIE                     Date: 11/04/1999
                        POLICE DEPARTMENT                Page:           7
    Case Description:                                    Case Number: 1998-00041194
    ABDUCTION & KIDNAPPING
```

available at this time. He advised me that she had information that he thought that was important and we should know immediately. With that I had M's Hansbrew come to the Erie Police Station, Detective Division, where I took a video tape statement of M's Hansbrew. M's Hansbrew stated earlier in the evening she was at Bingo at Holy Rosary with her mother and I believe her sister. She leaves there, returns to her mother-in-law's house where she spends a few moments. She receives a call from her daughter to pick her up at Tops and from there she goes to her vehicle. As she is leaving in the 1900 blk of Wayne, she is confronted by the suspect. She pulls over, he pulls her from the front seat of the van, puts the van in park and ties her up with tape and a T-shirt and puts her over the fold out bed in an L Shape manner. From there he drives to where she finds that it's the Holy Rosary parking lot where at that time he strips her and then attempts to grease her up with what she believed to be a vaseline material. From there she manages to get her feet loose and she believes she kicks the suspect in the groin area. She can hear him moaning, with that she hears the door open and the suspect leaves the vehicle. She manages to free herself completely and then drives to Tops Market to pick up her daughter at which time she explains to her what has transpired.

\*
We get into what conversation was held during the trip with the suspect. She says not a whole lot but during the course of the commotion and the struggle the suspect, who was trying to change his voice, she believes is talking in his normal voice. That is what time she is made aware that she believes it is Robert or Bob Vincent who she knows and lives across from her mother-in-law's residence. Also she said that she has gotten rides from this gentleman before, taking her home and in fact just that day she was at his place of business with a friend to pick up some kind of appliance. She went into detail as to what took place but that will be on this video tape. I will turn this video tape over to Det. Love for his review due to the fact that he will be handling this case plus he is also handling case #98-225790 which is another rape which occurred on M's Hansbrew just prior.


Sgt. DeDionisio 11/13/98 suppl
ID, Sgt. Jim DeDionisio, 11/13/98, per work request from Patrol Officer Rouse, I processed a van (Pa Regis: "BBP-6511" in the EPD basement area. This incident regarding a kidnapping and attempted rape. At this time, I checked with CID and was informed that this incident was not assigned yet. I really didn't want to process the vehicle without more information so I contacted the victim, Loretta Hansbrew, on the phone and she said that she would come into the station. I picked her up at her residence, 2209 Perry St and brought her into the station so that she could explain and point out anything in the vehicle that needed to be collected, processed, etc. On the way into the station, Mrs. Hansbrew started talking about what had happened last night and also about what happened in June of this year when she was raped. I asked Mrs. Hansbrew if she minded me asking her a few questions and she said that she didn't mind at all. After talking with Mrs. Hansbrew, it appears that she may know this

```
                        CITY OF ERIE                    Date: 11/04/1999
                        POLICE DEPARTMENT               Page:            8
     Case Description:                                  Case Number: 1998-00041194
     ABDUCTION & KIDNAPPING
```

suspect. She was reluctant to name a suspect stating that she wasn't sure and she would hate to give a name if that wasn't the individual. I explained that it would certainly help any investigation if the police had anything at all to follow up on. Mrs. Hansbrew explained that she feels that a guy (b/m, Bobbie Vincent) she has known for a long time may be the suspect. She also said that this Vincent lives on East 19th St near her (Hansbrew) in-laws. (Be advised that the EPD computer lists a b/m, Robert Vincent as living at 725 East 19th Street. Hansbrew's in-laws live at 721 E. 19th Street. According to the report, this suspect first appears in Hansbrew's vehicle after she leaves 721 East 19th Street).
*
I asked Hansbrew if she had seen Vincent recently. She said that he sells used appliances and that a friend of hers needed an appliance and that she (Hansbrew) just took the friend to see Vincent one day ago. I asked Hansbrew if she had seen Vincent prior to being rapde in June and she said two days prior to that rape that Vincent had given her a ride home. Hansbrew also told me that Vincent is around forty years of age. At this time, we were arriving at the station. I met up with Det. Sgt. Skindell and related what Hansbrew had just told me. Sgt. Skindell said that he would interview Loretta Hansbrew as soon as I was done processing her van in the basement. I took several photos of the vehicle. Hansbrew pointed out her clothing which was on the floor behind the drivers seat. The clothing consisted of a winter-type jacket, a pair of panties and a ripped-up shirt that was tied in knots. There was some masking-type tape attached to the shirt and a piece of this tape loosely (not attached) laying on the coat. Hansbrew also pointed out an orange colored razor-type knife that didn't belong to her. This knife was located on the bottom rail of the side door on the passenger side. This knife is the type with disposable, break-off blades and a clip so that you can store the item in a pocket. Hansbrew pointed out to me that she believes that the suspect was hiding behind the second set of seats in the van, between the seats and the rear portion of the van where it is like a bed area made up of folded down seat cushions. I processed the van including dusting for fingerprints all applicable surfaces including items that Hansbrew pointed out to me. I was unable to develop any prints with discernable characteristics suitable for comparison value.
*
No hairs, fibers, etc were noted or collected at this time. I did collect the razor knife, panties, shirt and masking tape. I returned Hansbrew's hooded coat back to her.
*
I tagged the other items on Property #22941 as follows: Tag #1 (panties), Tag #2 (shirt), Tag #3 (tape) and Tag #4 (razor). I processed the knife and tape for prints. Nothing developed on the knife after dusting it with several powders. I treated the tape with 'Gentian-Violet'. This is a chemical that is used for developing prints on tape, especially the sticky-side of the tape. No prints at all developed on the tape. Because there is nothing collected for comparison and this was not a completed rape, I won't be sending anything to the crime lab. The negatives from the photos will be included in the ID report when available; prints will be made only

```
                         CITY OF ERIE                    Date: 11/04/1999
                      POLICE DEPARTMENT                  Page:           9
     Case Description:                          Case Number: 1998-00041194
     ABDUCTION & KIDNAPPING
```

upon request. Sgt. Skindell arrived to interview Loretta Hansbrew. I advised Sgt. Skindell that the vehicle could be released as I was done with it. Apparently this case is going to be followed up by Det. Love. I'll get together with him later to determine if anything else needs to be done regarding this incident. This supplemental report filed.


J. DiBello   9-1-99
   A4 DiBello/Filutze - Called to serve warrant on arrestee who was at Erie County Prison. We transported to EPD without incident.

```
                        CITY OF ERIE         Exhibit "B"    Date: 11/04/1999
                       POLICE DEPARTMENT                    Page:          9
     Case Description:                          Case Number: 1998-00022579
     SEXUAL RAPE BY FORCE

             Make    . . . :           Model :              Style . :
             Quantity  . :           1.000    IT  Model/Style:
             Condition . :           Color  :               Reg Type:
             Registratn# :           State  :               Expires :
             Serial # . :                         OAN . . :

     Dispatch Narrative
     Information on the units assigned to the call follows.
             Unit#: 3A3      Radio#:         Officer 1:          Officer 2:
                 DSP: 06/30/98 04:30   ARV:   / /       :   CLR: 06/30/98 05:43
             Unit#: 3B4      Radio#:         Officer 1:          Officer 2:
                 DSP: 06/30/98 04:30   ARV: 06/30/98 04:32  CLR: 06/30/98 06:58
             Unit#: 3G1      Radio#:         Officer 1:          Officer 2:
                 DSP: 06/30/98 04:30   ARV: 06/30/98 04:32  CLR: 06/30/98 05:34
             Unit#: 3B2      Radio#:         Officer 1:          Officer 2:
                 DSP: 06/30/98 04:34   ARV:   / /       :   CLR:   / /       :
             Unit#: 3A4      Radio#:         Officer 1:          Officer 2:
                 DSP: 06/30/98 04:53   ARV:   / /       :   CLR: 06/30/98 06:58
             Unit#: 3C3      Radio#:         Officer 1:          Officer 2:
                 DSP: 06/30/98 04:58   ARV:   / /       :   CLR:   / /       :
             Unit#: 1B6      Radio#:         Officer 1:          Officer 2:
                 DSP: 06/30/98 06:57   ARV: 06/30/98 07:10  CLR: 06/30/98 11:29
             Unit#: 1B5      Radio#:         Officer 1:          Officer 2:
                 DSP: 06/30/98 07:46   ARV: 06/30/98 08:14  CLR: 06/30/98 09:55
     B/M BROKE INTO THE HOUSE TIED UP THE WOMAN AND RAPE HER         4:32:07
     EMERGYCARE NOTIFIED                                             4:32:57
     UNIT#: 3B4   Re-Routed at 04:52:07 on 06/30/98 to 1998-00022578.
     UNIT#: 3B2   Re-Routed at 05:04:46 on 06/30/98 to 1998-00022584.
     UNIT#: 3C3   Re-Routed at 05:05:52 on 06/30/98 to 1998-00022585.
     L3 ENROUTE TO HAMOT                                             5:37:53
```

J. Rouse
In A4 with Haller - At 0430 hrs on Tuesday 6/30/98 we were passing
2209 Perry. VPR Loretta Hansbrew was standing at her front door
screaming for help. Victim had duct tape around her head and face,
on her arms and on her legs, she was wearing a night dress. Her
first words were I've been raped. We determined that it had been
approx 20 minutes from the time of the rape until the time she made
it to the front door. We requested another unit to assist in
checking the house. Several EPD units responded. An ambulance was
requested. The house was checked for suspects, negative results.
This officer traveled with victim Hansbrew to the hospital. She was
able to recall the following information at the time of this report.
*
Mrs. Hansbrew was alone in the house when she went to bed around 2200
hrs. (Her husband works for the railroad and is out of town every
Sunday thru Thursday). All her lights were off, front and rear
doors were locked. She keeps her windows locked also. (Officers
found every 1st floor window locked except one). The rear of the
house has a door off the kitchen. A window located next to the rear
door was found unlocked and open. The window was open about 1".
Victim states she was sleeping in the bed in her 2nd floor bedroom.
She does not know what time it was. A man turned her over on her

CITY OF ERIE                                       Date: 11/04/1999
POLICE DEPARTMENT                                  Page:         10
Case Description:                              Case Number: 1998-00022579
SEXUAL RAPE BY FORCE

stomach and sat on top of her. He started covering her face with
duct tape. She was able to see by the mans hand that he was black.
As he was moving her around to bind her hands she could see one of
his legs, the leg of a black man. She also observed that the man
had an overwhelming stench of body odor. She said she felt the man
had not bathed for days. She could not tell if the man had any
facial hair or what type of build he had. She did think this was
not a very young man. He had her legs crossed at the ankles and had
them taped at first. He then removed that tape when he rolled her
over to rape her from the front. After he was done, before he left
he spoke in what the victim described as a muffled voice. He said
"I love you and I'll be back". Victim waited until she could no
longer hear the man in her house, then she started working her hands
loose. Then she was able to lift the tape in front of her right
eye enough to see some. She found her bedroom telephone but it
would not work. She made her way to the stairs, she rolled herself
down the stairs to the 1st floor. She found the telephone there but
was unable to get that one to work also. (Both phones are portable
types). Mrs. Hansbrew made her way to the front door and found it
was still locked. When she got the door unlocked and open and
started to scream for help, we were passing her house. Victim has
no suspect in mind but she did mention that an unknown b/m has been
coming around and mowing her lawn recently. He also has strong body
odor. She was unable to give a description of this man or recall
the last time he was at the house at the time of this report.
*
Several officers also noticed a white van parked down the street
from 2209 Perry. This van had 4 rolls of duct tape on the front
dash. The vans Pa Reg came back to a Moffett living in the same
block. Victim stated she had no duct tape anywhere in her house
indicating the suspect brought the tape with him. Robbery was not
a motive indicated by cash left out in plain view as well as several
rings, a cam-corder, vcr's, a computer, etc. Nothing is known to
have been taken at this time. Victim was transported to Hamot E.R
and a 'Rape Kit' was done. The duct tape was cut off by the attend-
ing nurse and saved as evidence. Several other items were tagged on
evidence #2201. Some from the hospital, some from the house. No
EPD units were available so the house was secured and an officer
kept custody. A forensic exam request was made out.
*
Det. Sgt. Stazer was advised by this officer at 0830 hrs of the
situation and asked to check the telephones while he was examining
the scene for evidence of any value to this investigation. Officer
Luke Yates noted earlier that the exterior phone lines did not look
to be cut or damaged. At the request of OIC Capt. Adams, victim
Loretta Hansbrew signed a waiver form giving consent to search her
premises. Victim's daughter Tara was contacted from Hamot E.R. at
approx 0500 hrs by this officer at the request of victim. She
arrived within a few minutes. Several officers also noted that
victim recently had carpet work done in her house and that duct tape
is frequently used in the installation of carpet.
*
Attachment:
Waiver Form

```
                        CITY OF ERIE                    Date: 11/04/1999
                     POLICE DEPARTMENT                  Page:
   Case Description:                                              11
   SEXUAL RAPE BY FORCE                       Case Number: 1998-00022579
```

Forensic Exam Request
*
Signed: J. Rouse    Supv: Sgt. McCall    6/30/98


DeDionisio  7-3-98
  ID (Sgt. Jim DeDionisio)...7-3-98, I was requested by ID Sgt.
Dennis Stazer to process for fingerprints property #22201, tag #1
(Lengths of duct-type tape). There also was included in this tag a
colorful silk-type scarf. I didn't do any kind of processing to this
item. RE: the lengths of tape.....I first processed the non-sticky
side of the tape with black magnetic powder and nothing really
developed. I then treated all of the tape with Gentian Violet (this
chemical is particularly effective on the adhesive side of the tape).
The results were that no prints developed. There were places where
you could see that someone had touched the tape as dark, blurred
areas developed, but nothing that would be of any comparison value.
This supplemental report filed.


Det. D. Stark  7-10-98
   On 7 Jul 98 this investigator was assigned to further investigate
this incident. Made contact with victim who advised that she was
working every day until 1630 hrs and would not be able to come in for
an interview during the week. She agreed to come in on 10 Jul 98 at
1000 hrs. Victim arrived at EPD as agreed on 10 Jul 98 with her
husband and a representative from Rape Crisis. In speaking with the
victim it was learned that on the date of this incident, 30 Jun 98,
she had worked that day. Later that evening, she had gone to bingo
to Holy Rosary and after had gotten home at approx. 2130 hours.
Victim indicated that she had taken a pain pill for her back and gone
to bed before 2300 hours that night.

   According to victim, she is a light sleeper but on that night she
did not awaken until this man was sitting on her back while she was
face down on her bed. She could see the man's bare knee by the light
shining through her bedroom window and determined that he was a black
male. Victim could not say if the man was wearing short pants or had
taken his pants off prior to the attack.

   Ms. Hansbrew stated that while the man was on her back he was
taping her eyes and mouth with duct tape. He put her hands above her
head, crossed her wrists and taped them. She was wearing a pink
nightgown and underwear. The man pulled off her underwear and tried
to insert his penis into her anus. Suspect tried this several times
with no success and even pulled her to the foot of the bed where he
had her kneeling and tried to penetrate her anus. Victim stated that
after his unsuccessful attempts at anal sex suspect turned her over
on her back and penetrated her vagina with his penis. Victim could
not say how long suspect had sex with her nor could she say if he had
an orgasm.
   Victim stated that while suspect was having sex with her he pulled
at the front of her nightgown and tore it, fondled her breasts and
kissed her on the cheek, or below her cheek, where the duct tape was

```
                        CITY OF ERIE                 Date: 11/04/1999
                     POLICE DEPARTMENT               Page:          12
   Case Description:                         Case Number: 1998-00022579
   SEXUAL RAPE BY FORCE
```

not covering her face.

   According to victim, after suspect was finished raping her he put more duct tape on her mouth, taped her arms in a kind of folded position and taped her legs together. After doing this, victim stated, suspect took a pillow and held it over her face in an attempt at suffocating her. She was trying to scream and was wriggling as suspect was doing this and after a short time victim stopped moving. Victim indicated that just before suspect put the pillow over her face he said something, that was very muffled, like, "I love you and I will be back." She feels that because she stopped moving and screaming suspect stopped pushing the pillow on her face.

   Ms. Hansbrew did not hear suspect leave her residence. She stayed on her bed for a short time then worked her left forefinger free and was able to get the tape off of her mouth and partially off her right eye. She got the cordless telephone that was near her bed, crawled to the bathroom and used the phone to turn on the light. Victim then attempted to dial 911 but the telephone would not work. It was later determined that suspect had apparently turned on the cordless phone that was downstairs at the residence, which made the phone upstairs inoperable.

   Victim stated that she crawled downstairs, unlocked the front door and saw a police cruiser when she opened the door. She began to scream and the officers came to her aid. An ambulance was called and she was taken to the hospital.

   Victim feels that suspect was aware that she would be home alone.
   She has a 9 year old grandson who has been living with her and her husband and the boy just happened to be visiting with his mother on the date of this incident. She indicated that the man who had come by 4 or 5 times in the past couple months, to mow their lawn, was a black male in his late 30's or early 40's and had a strong body odor as suspect did. Victim stated that she never engaged in conversation with the man who did the lawn but he may have assumed she was living alone. This man has not been seen in the area for several weeks.

   Ms. Hansbrew could not give a description of the man who raped her nor his clothing. She did indicate that she felt the man was possibly 30 to 40 years of age.

   A check was made with several persons in victim's neighborhood in an attempt at identifying the man who had done her lawn with negative results. I was advised by victim's husband that he would attempt to find out who the man is and he would contact myself or Det. Love.

   On 8 Jul 98 it was brought to my attention that there was a rape reported on 1-10-98 by Elizabeth Easly and that there were some similarities to this rape. See incident #9801128. Also on 8 Jul 8 Officer Zawistoski advised that he had a warrant for a Kevin Burrows. Burrows had apparently attempted to have sex with a 13 year old girl. See incident #9822798. Burrows was living at 2334 McKinley

```
                    CITY OF ERIE                        Date: 11/04/1999
                  POLICE DEPARTMENT                     Page:         13
   Case Description:                          Case Number: 1998-00022579
   SEXUAL RAPE BY FORCE
```

which is not far from victim's residence.

Det. F. Bugaj  7-16-98
   Evidence listed on property number 22201 was transported to the
PSP laboratory for processing on 7-16-98.  Tag #3,5, 7 thru 15, PSP
E981782S, Investigator:  Stazer/Love.


L. Yates  6-30-98
   B4 Yates arrived at 0510 hrs. to secure residence, 2209 Perry
(Crime scene) at time L3 Franklin and A3 McMahon/Walker were present.

   Both L3 and A3 left at approx. 0540 hrs.

   B4 Yates was relieved by B6 Diloreto at 0707 hrs.

   B6 Diloreto relieved by B5 J. Barber at 0809 hrs.

   B5 J. Barber - Det. W. Love arrived at 0828 hrs., did walk-thru
of scene.  Det. Love left the scene at 855 hrs.

   B5 J. Barber relieved by B6 Diloreto at 0924 hrs.

   ID (SGT. STAZER) arrived at 1045 hrs. and processed the house.

   Det. Love arrived at 1100 hrs.  Officer Diloreto assisted Sgt.
Stazer in processing.
   Residence secured at 1128 by Det. Love and Sgt. Stazer left
scene with B6 Diloreto.
      Supplemental given to Det. Love.


J. Rouse  7-17-98
   The victim in this case had the bandana on her head.  The nurse at
Hamot removed it as well as the tape and placed everything in a bag.
The suspect taped over the bandana covering victim's face, eyes, and
mouth.


Wm. Masi  10-8-98
   Evidence listed on property no. 22201 was transported to the PSP
lab in Lawrence Park for processing this date.  Tag #2.  PSP
E98-2562S, Investigator:  Stazer.


WM. MASI   10-14-98
   Evidence listed on property no. 22201 was returned to the ID and
Property Units this date from PSP lab.  Tag #s:
3,5,7,8,9,10,11,12,13,14,15.  Investigator:  Stazer. PSP E982562S.


WM. MASI  10-14-98
   Evidence listed on property #22201 tag #2 was returned to the ID