**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **EMMITT GRIER, JR.,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 05-05 Erie** |
| | ) | |
| **v.** | ) | **District Judge Maurice Cohill** |
| | ) | |
| **SUPER. EDWARD KLEM, et al.,** | ) | **Magistrate Judge Susan Paradise Baxter** |
| **Defendants.** | ) | |


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**


**I.      RECOMMENDATION**

It is respectfully recommended that Plaintiff's motion for summary judgment [ECF No. 95] be granted.

It is further recommended that Defendants' motion for summary judgment [ECF No. 99] be granted in that the Commonwealth of Pennsylvania should be dismissed from this action and the motion for summary judgment should be denied in all other respects.


**II.      REPORT**

**A.  Introduction**

The case before us is on remand from the United States Court of Appeals for the Third Circuit with the specific instruction that this Court "determine whether Grier's procedural due process rights, when considered within the framework of Pennsylvania's procedures for post-conviction relief, were violated."  ECF No. 80.

Plaintiff Emmitt Grier, Jr., acting *pro se*, originally filed the instant civil rights action under 42 U.S.C. § 1983 on January 6, 2005. As relief, Plaintiff sought "legal access to the two (2) rape kits ... taken from the rape victim," as well as the Plaintiff's DNA taken at the time of arrest "[f]or the limited purpose of DNA (comparative) testing." ECF No. 3, Complaint, pg. 6.

### B. Relevant Procedural History

Due to the nature of this case, a detailed review of the procedural history, as well as the facts underlying the original criminal conviction, must be undertaken before we can proceed to the legal question presently before this Court.

### 1) The Underlying Criminal Matters

On August 31, 1999, the Commonwealth of Pennsylvania charged Plaintiff with two counts of rape, one count of attempted rape, one count of kidnapping, one count of burglary, and three counts of unlawful restraint. ECF No. 97, Plaintiff's Concise Statement of Undisputed Material Facts, pg. 8. These charges stemmed from three separate attacks on Loretta Hansbrew[1] which occurred in June and November of 1998 and in August of 1999.

The first incident – the first rape – occurred on June 30, 1998. Hansbrew was asleep in her bed when she awoke to a man straddling her back. Hansbrew testified that she was raped repeatedly and smothered with a pillow. ECF No. 104-1, pg. 4. Hansbrew did not see the perpetrator's face but did identify the man as African-American. Id. at 3. Before leaving, the perpetrator whispered something that sounded like "I'll be back." ECF No. 97, pg. 2. Hansbrew was unable to provide police with an idea as to who may have raped her. ECF No. 104-1, pg. 6.

---

[1] The victim of all three attacks is the mother of Plaintiff's fiancé and the grandmother of his children.

Hansbrew did tell police her attacker was "not a very young man" but may have been around 30-40 years old. ECF No. 97, pg. 3. Grier was 26 years old at the time of the June 30, 1998 rape. Id. at  pg. 4. Medical personnel conducted a "rape kit" to gather DNA evidence from the victim following the June 30, 1998 incident.  Id. at  pg. 7.

The second incident – the attempted rape – occurred on November 12, 1998. Hansbrew was attacked while driving her van. Hiding in the back of Hansbrew's van, the assailant pressed "what felt like a gun against her neck" and ordered her to pull the vehicle to the side of the road. ECF No. 97, pg. 3. After Hansbrew stopped the van, the assailant forced Hansbrew to the back of the van, taped her eyes, and drove to another location.  The attacker was unsuccessful in his attempt to rape Hansbrew; she kicked the assailant until he fled the scene. ECF No. 104-1, pg. 8-9. After the attempted rape, no rape kit was conducted.

Hansbrew believed the same man perpetrated both the June 30 and November 12, 1998 attacks. ECF No. 104-2,  pg. 12. Hansbrew noted the assailant in both attacks had a "pungent body odor" similar to the smell of someone working on a car. ECF No. 97, pg. 3. Hansbrew also suspected her attacker was someone with whom she had a pre-existing relationship because of his comments, voice and sweater. Id. Following the November 12, 1998 incident, Hansbrew told police that her mother-in-law's neighbor, Robert Vincent, may have been responsible for the attacks. ECF No. 104-1, pg. 9.

The third incident – the second rape – occurred on August 31, 1999. Plaintiff Grier admittedly went to Hansbrew's home to request water for his over-heated car's radiator. Hansbrew permitted Grier to enter the house where they proceeded to discuss discord in Grier's relationship with Hansbrew's daughter, as well as the death of one of Grier's sons in 1997. ECF

No. 97, pg. 4-5.  At some point during the visit, a sexual encounter between Hansbrew and Grier ensued. ECF No. 97, pg. 5.  Shortly after leaving the Hansbrew home, Grier was arrested.  Id.

Grier was then taken to the Erie Police Department.  In an initial videotaped statement on August 31st, Grier described his version of that morning's events (i.e., that a consensual sexual encounter occurred between himself and Hansbrew).  Several hours later, the investigating detective conducted a second videotaped interview, in which Grier confessed to the June and November 1998 attacks. ECF No. 97, pg. 5-6.

Medical personnel conducted a "rape kit" to gather DNA evidence from the victim following the August 31, 1999 incident. ECF No. 97, pg. 7.  The investigating detective sent the DNA evidence to the Pennsylvania State Police Laboratory for the specific purpose of having a comparison of the two kits performed "to identify whether the same individual perpetrated both the June 30, 1998 and August 31, 1999 incidents."  Id.  No comparison of the rape kits has ever been conducted.

Since his confession in the aftermath of the August 31, 1999 incident, Plaintiff Grier has consistently denied responsibility for the two 1998 incidents.  Prior to trial, Grier declined multiple plea bargain offers, provided alibi information, and asked his attorneys to seek DNA analysis of the two rape kits. ECF No. 97, pg. 8-9.  In the present case, Grier continues to assert his innocence.[2]

<u>Pre-trial</u>

Plaintiff was charged with two counts of rape, one count of attempted rape, three counts of unlawful restraint, one count of burglary, and one count of kidnapping. ECF No. 97, pg. 8. Plaintiff was initially represented by public defender A.J. Adams, Esquire. Mr. Adams was

---

[2]  In a February 1, 2011 affidavit, Grier reiterated his claim, swearing under penalty of perjury, "that I was not the perpetrator of the June and November 1998 incidents." ECF No. 104-4, pg. 41.

permitted to withdraw from the case in April 2000, two months prior to trial, due to a difference of opinion with Grier over defense strategy. Id. at pg. 8-9. See also ECF No. 104-3, pg. 44 (Grier's "Motion for Change of Counsel" based upon "an irreconcilable personality conflict and difference of opinion on the manner in which this case should be litigated."). Thereafter, the trial court appointed new counsel James Pitonyak, Esquire, who continued to represent Plaintiff throughout his criminal trial.

Jury Trial and Direct Appeal

At the June 20-22, 2000, jury trial, no DNA evidence was introduced, yet videotape of Grier's confessions was played for the jury. Hansbrew's trial testimony describing the attacks differed from Grier's videotaped statements. In addition, Grier took the stand to testify in his defense claiming the August 1999 sexual encounter was consensual, and offering two alibi witnesses. ECF No. 97, pg. 9.

Plaintiff claims he directed Attorney Pitonyak to request a court order for the DNA evidence collected from Hansbrew so that it could be compared with a sample Plaintiff provided. ECF No. 104-4, pg. 42.[3]

On June 22nd, following a three-day trial, a jury convicted Plaintiff of two counts of rape, one count of attempted rape, one count of burglary, and three counts of unlawful restraint. ECF No. 104-4, pg. 11. On August 10, 2000, Grier was sentenced to an aggregate total of twenty-eight and a half to seventy-five years of incarceration. ECF No. 104-5, pg. 6-8. On August 15, 2000, Plaintiff motioned for a judgment of acquittal or, alternatively, a new trial or

---

[3]  In an evidentiary hearing on a PCRA in November of 2002, Attorney Pitonyak, however, claimed that he discussed the matter with Plaintiff and that they both decided the request should not be made for strategic reasons. ECF No. 104-4, pg. 15.

reconsideration and modification of his sentence.  No. 104-1, pg. 2. On November 13, 2000,

Judge Domitrovich denied Plaintiff's motion.  Id. at pg. 43.

Plaintiff then took a direct appeal to the Superior Court raising arguments as to the

weight and sufficiency of the evidence.  ECF No. 104-4, pg. 25.  On August 15, 2001, the

Superior Court affirmed the judgment and conviction of the lower court.  Id.  Plaintiff then filed

a petition for allowance of appeal to the Supreme Court of Pennsylvania, which was denied on

April 24, 2002.  Id. at pg. 28.

<u>PCRA petition</u>

On August 7, 2002, Plaintiff filed a *pro se* petition for post-conviction collateral relief

("PCRA petition") raising the following issues:

1. Trial counsel was ineffective for his failure to file motion for trial severance of identical charges.

2. That trial counsel was ineffective for his failure to pursue DNA testing for exculpatory evidence.

3. That trial counsel was ineffective for his failure to request Suppression of evidence hearing of; [sic] statements, video tapes, etc.

4. Prosecutional misconduct in misrepresenting the facts of the case as these facts applied to each individual case in general.

ECF No. 104-4, pg. 4 (verbatim).  In his *pro se* petition, Plaintiff specifically requested that the

District Attorney produce the DNA evidence taken from Hansbrew prior to trial "for purposes of

... DNA testing" in order to prove his innocence.  Id. at 6-7.  Plaintiff explained that:

> This testing would prove that the victim['s] previous attacks were not encounters from petitioner.  If such proof would have been presented at my trial, this exculpatory evidence would have supported my defense, of just having a one chance encounter of consensual sex with the complain[ant] in this case.

Id. Counsel, William Hathaway, Esquire, was appointed and he then filed a Supplement to the *pro se* PCRA petition again arguing for the court-ordered introduction of DNA evidence.[4] ECF No. 104-4, pg. 30-33. The PCRA court conducted two evidentiary hearings on the matter.

In July of 2003, Judge Domitrovich, sitting as the PCRA court, dismissed the PCRA petition as without merit. The court held that Grier was not entitled to Postconviction DNA testing under Pennsylvania precedent that precludes Postconviction access to DNA evidence when the conviction rests on a voluntary confession. The Superior Court affirmed her decision on March 25, 2004, and the Supreme Court declined to hear an appeal by order dated November 30, 2004. See ECF No. 104-4, pg. 11-39.


The instant §1983 action

On January 6, 2005, Plaintiff filed a *pro se* action in this Court under 42 U.S.C. § 1983. Edward Klem (Superintendent of SCI-Mahoney), the Erie County District Attorney, the Commonwealth of Pennsylvania, and the Erie County Office of the Prothonotary were named as Defendants.[5] As relief, Plaintiff sought "legal access to the two (2) rape kits ... taken from the rape victim" "[f]or the limited purpose of DNA (comparative) testing." ECF No. 3, Complaint, pg. 6.

On May 15, 2006, this Court issued a Report and Recommendation recommending the dismissal of this case based upon the holding of Heck v. Humphrey, 512 U.S. 477 (1994) which mandates that a state prisoner cannot raise a § 1983 civil rights claim relating to the validity of

---

[4] The counseled petition explained: "Petitioner contends that given the introduction of DNA evidence, he would have been exculpated from the other incidents and his contention that the remaining incident was consensual would have been credible and not unfairly dismissed by the jury given the pattern of conduct evidence arising from the other incidents." ECF No. 104-4, pg. 31.

[5] Edward Klem and the Office of the Prothonotary are no longer parties to this action.

his conviction or sentence until his conviction has been reversed, expunged, declared invalid, or called into question by the issuance of a writ of habeas corpus. ECF No. 45. Plaintiff filed Objections to the Report and Recommendation. ECF No. 46. By Order dated June 29, 2006, District Judge Cohill adopted the Report and Recommendation as the opinion of the Court holding that "this case be dismissed as an improper attempt to collaterally attack Plaintiff's state court conviction and sentence." ECF No. 47.

Plaintiff filed an appeal to the Third Circuit. Counsel was appointed and the case was stayed pending the Supreme Court's decision in District Attorney's Office for the Third Judicial District v. Osborne, 557 U.S. ___, 129 S.Ct. 2308 (2009).[6]

On June 18, 2009, the Supreme Court issued a decision in Osborne holding that the federal constitution does not provide a broad, freestanding right to access DNA evidence in the post-conviction setting. In the context of procedural due process, the Court reviewed Alaska's judicially created procedures for accessing DNA evidence, which provides for discovery of DNA evidence when that evidence is newly available, material and diligently pursued. The Court concluded that Alaska's procedures, which tracked both federal law, and the law of other states, were "not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental liberty.'" Osborne, ___ U.S. at ___, 129 S.Ct. at 2320-21, quoting Medina v. California, 505 U.S. 437, 446 (1992).

---

[6] The Supreme Court granted certiorari on the specific question "of whether an incarcerated plaintiff was barred from bringing a § 1983 claim to request access to evidence for post-conviction DNA analysis." Grier v. Klem, 591 F.3d 672, 675 (3d Cir. 2010). While the Supreme Court did not definitively answer that question, it has since answered it in the negative. Skinner v. Switzer, ___ U.S. ___, ___, 131 S.Ct. 1289, 1293 (Mar. 7, 2011) (holding that state prisoners may assert a claim for DNA testing of crime-scene evidence in a civil rights action under 42 U.S.C. §1983.).

Thereafter, by Opinion dated January 12, 2010, the Third Circuit applied <u>Osborne</u> to the case *sub judice* holding that the <u>Heck v. Humphrey</u> rule does not bar a § 1983 claim seeking post-conviction access to DNA evidence:

> In light of <u>Osborne</u> and [<u>Wilkinson v.] Dotson</u>, [544 U.S. 74 (2005)], we agree with our sister courts and hold that in the narrow circumstance where a prisoner files a § 1983 claim to request access to evidence for DNA testing, that claim is not barred by the principles outlined in <u>Heck</u>. Even if Grier does prevail on this §1983 claim, he will merely gain access to biological evidence which in and of itself cannot invalidate or undermine his convictions.
>
> There is no substantive due process right to access DNA evidence and procedural due process does not *require* that a district attorney disclose all potentially exculpatory evidence for post-conviction relief to a prisoner. Therefore, by deciding Grier's § 1983 claim is not barred, we have not determined whether his due process rights have been violated.

ECF No. 80-1, pg. 13 (internal citations omitted).

Upon remand, this Court held a status conference and, upon the request of counsel[7], stayed the case for several months pending the Pennsylvania Supreme Court's decision in <u>Commonwealth v. Wright</u>, 14 A.3d 798 (Pa. 2011). ECF No. 90. When after several months no decision was forthcoming, this Court lifted the stay and issued a briefing order.

Counsel for Plaintiff filed an Amended Complaint on August 25, 2010. ECF No. 91. The Amended Complaint contains several counts: Count I – violation of procedural due process; Count II – denial of right to meaningful access to courts; Count III – denial of opportunity to show actual innocence; Count IV – denial of rights to Confrontation and Compulsory Process; and Count V – cruel and unusual punishment.[8] Named as Defendants are: the Commonwealth of

---

[7] Appointed counsel continues to represent Plaintiff in this matter.

[8] Because this Court recommends the granting of relief as to Plaintiff's procedural due process claim, the new claims raised in the Amended Complaint need not be addressed by this Court.

Pennsylvania, the Erie County District Attorney, and Jack Daneri, in his official capacity as the

District Attorney for Erie County.[9]  The Amended Complaint seeks solely non-monetary relief.[10]

Defendants filed an Answer which indicates that the Erie County Clerk of Courts is still

in possession of evidence from Plaintiff's trial which presumably includes the DNA evidence at

issue in this case.  ECF No. 93, ¶ 2.  Thereafter, the parties filed cross motions for summary

judgment.  ECF Nos. 95, 99.  Defendants did not file a brief in opposition to the Plaintiff's

pending motion for summary judgment[11], but instead filed a Response to Plaintiff's Concise

Statement of Undisputed Material Facts which included one paragraph of legal argument.  See

ECF No. 106.  Following the filing of a Reply Brief by Plaintiff, Defendants filed a "Brief in

---

[9]  All three Defendants are represented by Assistant District Attorney Michael Burns.

[10]  Plaintiff requests a judgment:

    a.  Ordering Defendants to take all steps reasonably necessary to ensure that the physical evidence taken from […] Ms. Hansbrew on June 30, 1998 and August 31, 1999 ("rape kits") is preserved;

    b.  Ordering Defendants to produce to Plaintiff the physical evidence taken from […] Ms. Hansbrew on June 30, 1998 and August 31, 1999;

    c.  Ordering Defendants to cooperate with Plaintiff in selecting a qualified laboratory for testing the evidence or, in the alterative, ordering the evidence to be tested at a specific, qualified laboratory chosen by this Court;

    d.  Reasonable attorneys fees and costs; and

    e.  Any other relief that this Court deems just and proper.

ECF No. 91, pg. 14.

[11]  The Local Rules of this Court mandate that opposing counsel must file a Memorandum in Opposition to a motion for summary judgment addressing applicable law and explaining why there are genuine issues of material fact to be tried and/or why the moving party is not entitled to judgment as a matter of law.  See Local Rule 56(c)(2).

Reply to Plaintiffs' [sic] Reply to Defendants' Opposition to Plaintiff's Motion for summary judgment." ECF No. 110.

This Court heard oral arguments on the cross motions for summary judgment in May 2011. ECF No. 104-4, pg. 41-42. The issues have been fully briefed and argued and are ripe for disposition by this Court.

### C. Standard of Review

According to the Federal Rules of Civil Procedure, summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

### D. Plaintiff's Motion for Summary Judgment

The Third Circuit remanded this matter with the specific instruction that we determine whether Plaintiff's procedural due process rights were violated when considered within the framework of Pennsylvania's procedures for post-conviction relief.

"Due process" is guaranteed through the Fourteenth Amendment of the United States Constitution which provides that no state shall "deprive any person of life, liberty, property, without due process of law." U.S. Const. Amend. XIV. The Due Process Clause was promulgated to secure the individual from the arbitrary exercise of the powers of government. The "procedural" aspect of the Due Process Clause requires the government to follow appropriate procedures to promote fairness in governmental decisions' while the "substantive" [12]

---

[12] In Osborne, the Supreme Court found no freestanding **substantive** due process right to access DNA evidence. 557 U.S. at ___, 129 S.Ct. at 2322 ("We […] conclude, in the circumstances of this case, that there is no such substantive due process right."). See also Grier v. Klem, 591 F.3d 672, 678 (3d Cir. 2010) citing Osborne, 557 U.S. at ___, ___, 129 S.Ct. at 2319-20, 2322 ("There is no substantive due process right to access DNA evidence, and procedural due process does not *require* that a district attorney disclose all potentially exculpatory evidence for post-conviction relief to a prisoner."); Bonner v. Montgomery County, 2011 WL 1162826, at * 4 (E.D. Pa. March 28, 2011) ("[W]e read Osborne as Skinner [v. Switzer, ___ U.S. ___, 131 S.Ct. 1289 (2011)] did: the question presented was whether a liberty interest in accessing DNA

aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression. Daniels v. Williams, 474 U.S. 327, 329-33 (1986).

The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing, before the government can deprive an individual of a liberty or property interest. To establish a procedural due process violation, a person must first demonstrate that he has been deprived of a constitutionally-protected property or liberty interest. Daniels,474 U.S. at 339; Renchenski v. Williams, 622 F.3d 315, 325 (3d Cir. 2010). "Only upon finding that a protected interest is asserted does a court consider the constitutional sufficiency of the procedures associated with the interest." Jones v. Township of Middletown, 2011 WL 3157143, at *4 (E.D. Pa. July 26, 2011). If a liberty or property interest is found, the next step in the due process inquiry is to determine what process is due. "Due process … is not a technical conception with a fixed content unrelated to time, place and circumstances." Gilbert v. Homar, 520 U.S. 924, 930 (1997). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S 471, 481 (1972).

So then, we must review Grier's claim according to the familiar two-part test for analyzing alleged deprivations of procedural due process rights: 1) whether Grier has a cognizable liberty or property interest under state or federal law in obtaining evidence for DNA testing; and 2) if so, whether Grier was afforded the process he was due under the Constitution.

The Supreme Court's decision in Osborne is apposite and controls our review. 557 U.S.

---

evidence to prove actual innocence was a fundamental right protected by the doctrine of substantive due process, and the Court definitely held that it was not.").

at ___, 129 S.Ct. 2308. The <u>Osborne</u> Court concluded that a prisoner has no liberty interest in "any procedures available to vindicate an interest in state clemency," because clemency is inherently discretionary. <u>Id</u>. at 2319. Despite that holding, the <u>Osborne</u> Court recognized that a prisoner may retain a state-created "liberty interest in demonstrating his innocence with new evidence under state law." <u>Id</u>. However, the Supreme Court was clear that this residual liberty interest is limited. It does not entitle a prisoner to all exculpatory evidence: rather, a prisoner's "right to due process is not parallel to a trial right but … must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a liberty interest in post-conviction relief." <u>Id</u>.

Here, this Court finds Grier to hold an analogous state-created liberty interest in demonstrating his innocence in the context of post-conviction proceedings with appropriate evidence. 42 Pa. C.S.A. § 9542, <u>et seq</u>.[13] The question here is specifically whether, as applied to him, the state procedures for post-conviction DNA testing violated Grier's procedural due process rights.[14]

Before deciding what process Grier was due, the Court must clarify that the Pennsylvania DNA testing statute is not at issue in this case. After Grier filed his PCRA petition, but before the trial court decided the merits of his petition, Pennsylvania expanded its procedures for post-conviction access to DNA evidence. The Pennsylvania legislature enacted the "Post-Conviction

---

[13] The Act defines its scope as "This subchapter provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief. The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis." <u>Id</u>.

[14] "An as-applied attack … does not contend that a law is unconstitutional as written, but that its application to a particular person under particular circumstances deprived that person of a constitutional right." <u>United States v. Marcavage</u>, 609 F.3d 264, 273 (3d Cir. 2010) <u>citing</u> <u>Wisconsin Right to Life, Inc. v. FEC</u>, 546 U.S. 410, 411-12 (2006).

DNA testing" statute, 42 Pa.C.S. A. § 9543.1, which became effective on September 9, 2002. This statute requires that in order to obtain testing of DNA evidence, the applicant present a *prima facie* case demonstrating:

> 1) the identity of the perpetrator was at issue at trial; **and**

> 2) DNA testing, assuming exculpatory results, would establish the applicant's actual innocence.

Id. This new statute was in effect when Judge Domitrovich dismissed Plaintiff's PCRA petition. As the Court of Appeals noted in this case "[e]ven though Pennsylvania's Post-Conviction DNA Access Law went into effect between the time Grier filed his PCRA petition and when the court issued its judgment, the court made its determination without citing it." Grier, 591 F.3d at 675 n2. Plaintiff makes clear that he is only challenging the constitutionality of the procedures for post-conviction DNA access that predate the codification of 42 Pa.C.S. § 9543.1 as those are the procedures under which Judge Domitrovich denied his PCRA petition. ECF No. 96, pg. 39-40.

Here, the state court judge denied Grier's PCRA petition relying on Commonwealth v. Godschalk, 451 Pa.Super. 425 (1996) which held that "a petition for post-conviction DNA testing will be granted where a conviction rests *largely* on identification evidence *and* where, technology could definitely establish the accused's innocence." Id. at 427 (emphasis in original). The state court reasoned that because Grier's "convictions rest largely on his own confession, as was the case in Godschalk, Defendant's assertion that the outcome of his trial would have been different if counsel has [sic] sought out DNA testing, is without merit." ECF No. 104-4, pg. 18. Put another way, the state judge held that, by confessing in August of 1999 to all three incidents involving Ms. Hansbrew, Grier effectively relinquished any future interest in accessing any DNA

evidence after his convictions. The effect of the state court's ruling was to deem Grier's confessions as a bar to any post-conviction testing.

The state court ruling reflected Pennsylvania law at that time. The Godschalk decision, upon which Judge Domitrovich relied in denying Grier's PCRA petition, represents a judicially crafted barrier to the access of DNA evidence. [15] This Court finds that this barrier (or, as Plaintiff terms it, a "confession bar") violated Grier's procedural due process rights.

As previously indicated, a prisoner may retain a state-created liberty interest in demonstrating his innocence with new evidence under state law." Osborne, 557 U.S. at ___, 129 S.Ct. at 2320. However, states are afforded great flexibility in crafting their post-conviction relief process and a federal court may only "upset a State's post-conviction relief procedures […] if they are fundamentally inadequate to vindicate the substantive rights provided." Id. at 2319.

The Supreme Court has instructed that the deferential standard announced in Medina v. California, 505 U.S. 437 (1992), governs the process due a prisoner seeking evidence for the purpose of obtaining post-conviction relief. See Osborne, 557 U.S. at ___, 129 S.Ct. at 2320. Under that standard, a federal court should uphold a state's post-conviction procedures so long as they do not "'offend … some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental' based on historical practice, the process's operation, and the Court's own precedent."[16] McKithen v. Brown, 626 F.3d 143, 152 (2d Cir. 2010) quoting

---

[15]  Ironically, Bruce Godschalk, who initially confessed to and was convicted of two separate rapes, was exonerated on both convictions after he won access to DNA evidence in a § 1983 suit in federal court. Seth F. Kreimer & David Rudovsky, Double Helix, Double Bind: Factual Innocence and Postconviction DNA Testing, 151 U.Pa.L.Rev. 547 (2002).

[16]  Medina points to "historical practice" as probative in making the determination of whether a "procedural rule can be characterized as fundamental." Medina, 505 U.S. at 446. Here however, an examination of historical practice and tradition are of no moment to the analysis due to the complicated and evolutionary nature of DNA science. See Osborne, 557 U.S. at ___, 129 S.Ct.

<u>Medina</u>, 505 U.S. at 443.  Here, this Court must examine the judicially crafted "confession bar" to determine whether it "transgresses any recognized principle of 'fundamental fairness' in operation."  <u>Medina</u>, 505 U.S. at 448, <u>citing</u> <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990).[17]

Prohibiting defendants who have confessed to a crime from accessing DNA evidence after conviction violates the concept of fundamental fairness.  It is not unheard of for a suspect to confess to crimes he has not committed.  Indeed, studies have shown that false confessions accrued in approximately 25% of DNA exonerations in the United States.  <u>See</u> Understand the Causes: False Confession, Innocence Project, <u>http://www.innocenceproject.org/understand/false-confessions.php</u> (last visited Sept. 14, 2011).

Further, the trial judge's use of Grier's confession as an absolute prohibition on access to DNA evidence is fundamentally unfair given that a confession is "merely another piece of evidence to be considered in resolving the ultimate issue of guilt or innocence."  <u>Commonwealth v. Ewell</u>, 456 Pa. 589, 593 (1974).   <u>See also</u> <u>Crane v. Kentucky</u>, 476 U.S. 683, 689 (1986) ("Confessions … are not conclusive of guilt.  And, as with any other part of the prosecutor's case, a confession may be shown to be insufficiently corroborated or otherwise unworthy of belief.").  Jurors are permitted to attach as much or as little weight to a confession as they see fit. <u>Ewell</u> 456 Pa. at 593.  Therefore, the state court's use of Grier's confession – a confession he immediately and consistently repudiated – as an automatic bar to deny access to DNA testing was fundamentally unfair.

---

at 2316 ("Modern DNA testing can provide powerful new evidence unlike anything known before.").

[17]  The <u>Osborne</u> Court made clear that it is the plaintiff's "burden to demonstrate the inadequacy of the state-law procedures available to him in state post-conviction relief."  557 U.S. at ___, 129 S.Ct. at 2321.

Importantly, the Pennsylvania Supreme Court itself recently recognized the fundamental unfairness of using a defendant's confession as a barrier to DNA access in post-conviction proceedings. In Commonwealth v. Wright, the state's highest court examined the question of whether "a voluntary confession precluded an individual from establishing a *prima facie* case of his innocence in order to obtain DNA testing under § 9543.1." 14 A.3d 798, 808 (Pa. Feb.23, 2011). In expressly disavowing the per se confession bar enunciated by the Superior Court in Commonwealth v. Young, 873 A.2d 720 (Pa.Super. 2005), the Wright Court recognized the "fallacy" that confessions, in and of themselves, "provide irrefutable evidence of guilt." Id. at 810. [18] In its analysis, the Wright Court reviewed the post-conviction DNA testing statutes of "forty-two states, the District of Columbia, and the federal government" and found that "none of those statutes expressly bars DNA testing in cases where there is a confession…" Id. at 811. Moreover, the Wright Court concluded that the state legislature had no intention of barring access to DNA evidence in cases of confessions. Id. at 814 ("[N]owhere … in the [DNA testing statue] did the legislature include an explicit prohibition to prevent a convicted individual who has confessed to a crime, and who otherwise meets all of the statutory requirements, from obtaining DNA testing, merely because of the existence of the confession.").

Based on the foregoing, this Court finds that Grier has demonstrated that the procedures afforded him by the state court were fundamentally inadequate and violate his right to procedural due process. Accordingly, Plaintiff's motion for summary judgment should be granted.

---

[18] The Court noted three cases, one of them a capital case, wherein "innocent individuals gave confessions to police for crimes they did not commit and, even though DNA testing established that none of them had participated in the crimes for which they were convicted, their confessions all included distinct details of these crimes which had not been released to the public." Id. at 809 n.9, citing Godschalk, 451 Pa.Super. 425 (1996), Commonwealth v. Yarris, 519 Pa. 571 (1988), Yarris v. County of Delaware, 465 F.3d 129 (3d Cir. 2006), and Laughman v. Pennsylvania, 2007 WL 2345295 (M.D. Pa. 2007).

### E. Defendants' Motion for summary judgment

Besides arguing that there has been no procedural due process violation in this case, Defendants move for dismissal of this action against them on the basis of the statute of limitations, Eleventh Amendment immunity and qualified immunity.

#### 1) Statute of limitations

Defendants argue that this case should be dismissed based upon the time bar of the statute of limitations.

The federal civil rights laws do not contain a specific statute of limitations for § 1983 actions. However, it is well established that the federal courts must look to the relevant state statute of limitations. <u>Wilson v. Garcia</u>, 471 U.S. 261, 266 (1985) (later overruled only as to claims under the Security Exchange Act of 1934). In Pennsylvania, the statute of limitations for a civil rights violation is two years from the date of the alleged violation. <u>See</u> <u>Garvin v. City of Philadelphia</u>, 354 F.3d 215 (3d Cir. (Pa.) 2003); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451 (3d Cir.(Pa.) 1996).

The date upon which a § 1983 claim accrues is a matter of federal law. <u>Albright v. Oliver</u>, 510 U.S. 266, 280 n.6 (1994). A claim accrues when the litigant knew or had reason to know of the injury. <u>Montgomery v. DeSimone</u>, 159 F.3d 120, 126 (3d Cir.1998). Thus, the date when the plaintiff becomes aware, or should have become aware, of both the fact of injury and its causal connection to the defendant, triggers the limitations period.

Defendants argue that Plaintiff was injured no later than June 2000 (the date of his jury trial), when he was deprived of access to the rape kits. Consistent with this reasoning, Plaintiff had until June of 2002 to file his § 1983 civil rights action. Defendants are mistaken in this

regard.  In this case, Plaintiff is claiming that his civil rights were violated by the Commonwealth's post-conviction procedures, not by the initial deprivation of the DNA evidence.  Plaintiff's post-conviction petition was denied by the trial court in July of 2003, and was finally denied by the state Supreme Court on November 30, 2004.  The filing of Plaintiff's original complaint in this civil rights action is well within the two year statute of limitations.  See generally Centifanti v. Nix, 865 F.2d 1422 (3d Cir. 1989).

Accordingly, Defendants' motion for summary judgment should be denied.

### 2) Eleventh Amendment Immunity

Next, Defendants argue that Defendant Daneri is not a proper defendant in this action which "would properly be brought against the Pennsylvania Superior Court and the Pennsylvania legislature."  ECF No. 100, page 4.  Defendants provide no further argument in this regard and so, the motion for summary judgment should be denied.

Next, Defendants argue that the Commonwealth of Pennsylvania is immune under the Eleventh Amendment.  The Eleventh Amendment proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities.  Laskaris v. Thornburgh, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania);  Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274 (1977) (state agencies);  Edelman v. Jordan, 415 U.S. 651 (1974) (state employees acting in their official capacity).  The only ways that a state may be sued in federal court are if: (1) the state has waived its Eleventh Amendment immunity (Kentucky v. Graham, 473 U.S. 159 (1985)), or (2) Congress has made it unmistakably clear in either the language of a statute or in its legislative history that it is its intention to permit such suits (Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356 (2001)).  Neither of these is evidenced here.

Accordingly, the Commonwealth of Pennsylvania should be dismissed from this action.[19]

### 3) Qualified immunity

The doctrine of qualified immunity insulates government officials from liability for damages insofar as their conduct does not violate clearly established rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, "qualified immunity shields government officials from suit even if their actions were unconstitutional as long as those officials' action 'did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Burns v. Pennsylvania Dep't of Corrections, 642 F.3d 163, 176 (3d Cir. April 20, 2011) quoting Harlow, 457 U.S. at 818.

However, the doctrine of qualified immunity is inapplicable to the case at hand as the defense only applies to damages and not to requests for injunctive relief. Id. at 179 ("Although qualified immunity bars Burns from seeking monetary compensation, he may still be entitled to injunctive relief. See Harris v. Pernsely, 755 F.2d 338, 343 (3d Cir. 1985)."). In this case, Plaintiff has sought only injunctive relief and therefore, Defendants' motion for summary judgment should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for summary judgment [ECF No. 95] be granted.

---

[19] Furthermore, Plaintiff concedes that the Commonwealth is not a "person" for purposes of liability under §1983. See ECF No. 105, pg. 16 n.4.

It is further recommended that Defendants' motion for summary judgment [ECF No. 99] be granted in that the Commonwealth of Pennsylvania should be dismissed from this action and the motion for summary judgment should be denied in all other respects.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation by **October 3, 2011.**  Any party opposing the objections shall have until **October 17, 2011**, to respond thereto.  <u>See</u> Fed.R.Civ.P. 72(b)(2). **No extensions of time will be granted**.  Failure to file timely objections may constitute a waiver of appellate rights.  <u>See</u> <u>Brightwell v. Lehman</u>, 637 F.3d 187, 194 n.7 (3d Cir. 2011); <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).


<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge


Dated:  September 19, 2011